

**SO ORDERED.**

**SIGNED this 31st day of July, 2015.**

```
                    _____
                         LENA MANSORI JAMES
                    UNITED STATES BANKRUPTCY JUDGE
```
_____

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| BRADLEY DAVID GAITOR, ) | |
| ) | Case No. 13-80530 |
| DEBTOR. ) | |
| _____) | |
| ) | |
| BRADLEY DAVID GAITOR, ) | |
| ) | |
| PLAINTIFF, ) | Adv. Pro. No. 14-09059 |
| ) | |
| v. ) | |
| ) | |
| U.S. BANK, NATIONAL ) | |
| ASSOCIATION, ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

**ORDER AND OPINION GRANTING THE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND, THIRD, AND FOURTH CLAIMS FOR RELIEF**

This matter came before the Court on May 5, 2015, for a hearing on the Motion to Dismiss the First Amended Complaint filed by U.S. Bank, National Association ("U.S. Bank"). At the hearing, Michelle M. Walker appeared on behalf of Bradley David Gaitor (the "Plaintiff"), and Julie B. Pape appeared on behalf of U.S. Bank.

1

**FACTUAL BACKGROUND**

The Plaintiff filed a voluntary petition under Chapter 7 on April 19, 2013. In his petition, the Plaintiff listed a mortgage debt to U.S. Bank, secured by the Plaintiff's previous residence located at 5 Seaforth Road, Troy, New York. The Plaintiff indicated in his Statement of Intention that he intended to surrender the property, which was the subject of foreclosure proceedings. U.S. Bank received notice of the Plaintiff's bankruptcy filing. The Plaintiff received a bankruptcy discharge on September 6, 2013, and his case was closed.

On September 17, 2014, the Plaintiff filed a motion to reopen his case in order to file an adversary proceeding against U.S. Bank for alleged unlawful collection activities in connection with his former residence. The Court granted the motion to reopen, and the Plaintiff filed the present adversary proceeding against U.S. Bank on November 20, 2014. U.S. Bank filed an initial motion to dismiss the adversary proceeding on February 3, 2015. On February 27, 2015, the Plaintiff filed an Amended Complaint. The Plaintiff alleges in the Amended Complaint that, after he received his Chapter 7 discharge, U.S. Bank continued to send him statements indicating that he was in default on his mortgage payments. According to the complaint, the Plaintiff continued receiving these statements after his attorney contacted U.S. Bank to demand that collection activity on the account stop immediately. The Plaintiff alleges that he received a total of eleven mortgage statements from U.S. Bank post-discharge. Based on these alleged facts, the Plaintiff asserts in his Amended Complaint the following claims for relief:

1. First Claim for Relief: Civil Contempt for Willful Violations of the Permanent Discharge Injunction;

2. Second Claim for Relief: Unfair Debt Collection under N.C. Gen. Stat. Chapter 75, including:

    a) N.C.G.S. 75-54(2), which prohibits "[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt";

    b) N.C.G.S. 75-54(4), which prohibits "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; . . . or falsely representing the creditor's rights or intentions";

    c) N.C.G.S. 75-54(6), which prohibits "[f]alsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges";

    d) N.C.G.S. 75-55(2), which prohibits "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge"; and

    e) N.C.G.S. 75-55(3), which prohibits "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer."

3. Third Claim for Relief: Unfair and Deceptive Trade Practices under N.C. Gen. Stat. Chapter 75; and

4. Fourth Claim for Relief: Breach of the Duty of Good Faith and Fair Dealing.

U.S. Bank filed its Motion to Dismiss the Amended Complaint on March 23, 2015, seeking dismissal of all four of the Plaintiff's claims for relief. U.S. Bank argued in part that the Plaintiff's state law claims—the Second, Third, and Fourth Claims for Relief—were preempted by the Bankruptcy Code. The Plaintiff filed a Response to the Motion to Dismiss on April 9, 2015, arguing that the claims were not preempted.

This Court held a hearing on the Motion to Dismiss on May 5, 2015. At the hearing, U.S. Bank stated that it was no longer seeking dismissal as to the Plaintiff's claim for violation of the discharge injunction under 11 U.S.C. § 524 (the First Claim for Relief). Thus, the arguments at the hearing focused on the issue of preemption. The Court also asked the parties to submit supplemental briefs on the issue of the bankruptcy court's subject matter jurisdiction to hear any of the state law claims that were found not to be preempted by the Bankruptcy Code.

## STANDARD FOR DISMISSAL

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the court must take all factual allegations as true: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. However, a plaintiff's legal conclusions are not entitled to the same presumption of truth. See id. at 678-79.

## ANALYSIS

A. **The Plaintiff's Second, Third, and Fourth Claims for Relief are Preempted by the Bankruptcy Code.**

Preemption is grounded in the Supremacy Clause of the U.S. Constitution, which provides that the Constitution and federal laws enacted under it "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, § 2. Federal courts, including the Fourth Circuit Court of Appeals, have identified two basic types of preemption: field preemption and conflict preemption. See, e.g., Worm v. American Cyanamid Co., 970 F.2d 1301, 1304 (4th Cir. 1992). Field preemption "turns on discovering the intent of Congress." Id. Even if Congress does not expressly state its intent to "supplant[] state authority in a particular field[,] . . . its intent to do so may be inferred from its regulating so pervasively in the field as not to leave sufficient vacancy within which any state can act." Id. Conflict preemption occurs where a state law actually conflicts with federal law. Id.

In the bankruptcy context, a court determining whether a non-bankruptcy state law is preempted by the Bankruptcy Code should ask:

> (1) whether the state law is expressly preempted by Congress; (2) whether Congress intended to occupy the entire field so as to preempt state laws that might be applicable in that area; (3) whether the state law conflicts with the federal statutes such that the state law cannot be given effect; or (4) whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Johnston v. Telecheck Servs., Inc. (In re Johnston), 362 B.R. 730, 735 (Bankr. N.D. W. Va. 2007) (citations omitted) (examining preemption of state laws by the Bankruptcy Code).

When it comes to enforcement of federal laws, the Supreme Court has made clear that "private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001) (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979)); see also id. at 286-87 ("Without [congressional intent to create a private remedy], a

5

cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). Accordingly, where debtors call upon state and federal non-bankruptcy laws to supplement their remedies against creditors for violations of the Bankruptcy Code, many courts have found such non-bankruptcy remedies to be preempted by the Code's own enforcement provisions. For example, the First Circuit held that "the broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code." Bessette v. Avco Fin. Servs., 230 F.3d 439, 447 (1st Cir. 2000). The Second Circuit similarly found "no need to protect debtors who are already under the protection of the bankruptcy court" or to supplement the remedies provided under the Bankruptcy Code. Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010). The Bankruptcy Court for the Western District of North Carolina likewise found that "[t]he superimposition of state remedies by the Plaintiffs . . . undercuts the constitutional concern with uniform bankruptcy case administration." Tate v. NationsBanc Mortgage Corp. (In re Tate), 253 B.R. 653, 671 (Bankr. W.D.N.C. 2000) (citing U.S. Const. Art. I, § 8). See also Kokoszka v. Belford, 417 U.S. 642, 651 (1974) ("In short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act."); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002) (" '[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and . . . debtors alike.' " (quoting MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 914 (9th Cir. 1996)); Johnston, 362 B.R. at 739 (Congress "has the exclusive right under the Constitution

6

to establish uniform bankruptcy laws, and precluding various, non-uniform State law causes of action based on the same alleged wrong furthers the Congressional purpose of uniformity.").

Courts applying the law of preemption to debtors' efforts to remedy violations of the discharge injunction have generally found nonbankruptcy causes of action to be preempted,[1] at least to the extent that the nonbankruptcy cause of action depends on proof of the discharge violation. The Sixth Circuit rejected a debtor's attempt to assert a private right of action for a violation of the discharge injunction, reasoning that the "obvious purpose [of § 524] is to enjoin the proscribed conduct[,] and the traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit" for money damages. Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421 (6th Cir. 2000); see also id. at 422 ("Congress amended the Bankruptcy Code in 1984 to provide an express right of action under the automatic stay provision of 11 U.S.C. § 362(h). . . . Congress amended § 524 at the same time it amended § 362, but no private right of action was added in § 524. The contrast, we think, is instructive."). Likewise, the Ninth Circuit found the debtor's claim under the Federal Debt Collection Practices Act ("FDCPA")[2] to be preempted: the Ninth Circuit agreed with the Sixth Circuit that "it is not up to us to read other remedies into the carefully articulated set of rights and remedies" provided in the Bankruptcy

---

[1] These holdings are not without exception. As the district court acknowledged in Garfield v. Ocwen Loan Servicing, LLC, 526 B.R. 471 (W.D.N.Y. 2015), "[c]ourts that have addressed the issue of preclusion of [Federal Debt Collection Practices Act] claims based on an alleged violation of the bankruptcy stay or discharge injunction are divided. However, the majority view holds that a FDCPA claim is not available in such cases." Id. at 476 (internal citations and quotation marks omitted) (holding FDCPA claims were preempted by the Bankruptcy Code); see also Necci v. Universal Fid. Corp., 297 B.R. 376, 379 (E.D.N.Y. 2003) ("While courts that have addressed the issue of preclusion of FDCPA claims based upon an alleged violation of the bankruptcy stay are divided, the majority view holds that a FDCPA claim is not available in such cases.").

[2] Federal bankruptcy cases deciding motions to dismiss FDCPA claims are particularly instructive in light of the similarities between provisions of the FDCPA and provisions of the North Carolina Debt Collection Act ("NCDCA"). Unlike the FDCPA, the NCDCA also applies to creditors seeking to collect on their own debts. See N.C. Gen. Stat. § 75-50(3) (" 'Debt collector' means any person engaging, directly or indirectly, in debt collection from a consumer . . . .' "); Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 530 S.E.2d 865, 868 (N.C. Ct. App. 2000) (noting that unlike the FDCPA, the North Carolina act "does not limit the definition of debt collector only to those collecting debts on behalf of others; *any person* engaging in debt collection from a consumer falls within the statutory definition" (emphasis in original)).

Code. Walls, 276 F.3d at 507; see also id. at 510 (reasoning that to allow the debtor to assert a claim under the FDCPA "would circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt"). The District Court in Necci v. Universal Fidelity Corp., 297 B.R. 376 (E.D.N.Y. 2003), arrived at the same conclusion, adding that a contrary holding would likely render § 524 superfluous, as many debtor-plaintiffs would choose more lucrative remedies under the FDCPA and other non-bankruptcy laws. See id. at 381 (finding that the bankruptcy code precluded the plaintiff's FDCPA claim); see also id. ("Section 524 provides for a specific remedy, contempt, for violations of [the discharge injunction]. To permit Plaintiff to circumvent that provision and its remedy by bringing a claim under the FDCPA would directly contravene the bankruptcy code's remedial scheme."). At least one bankruptcy court in the Fourth Circuit has made a similar holding. See Johnston, 362 B.R. at 739 ("[C]onsidering that § 524 does not accord the Debtor with a private right of action for a violation of the discharge injunction, it would be improper for the court to recognize one based on State law.").

In the present case, the Plaintiff conceded that each of his state law claims depends on the existence of the discharge injunction and U.S. Bank's alleged violation of it:

> Each of Mr. Gaitor's state law claims in part stem from U.S. Bank's deceptive representations that Mr. Gaitor owed tens of thousands of dollars even though the underlying debt had been discharged in bankruptcy. Those representations were deceptive and wrongful only because Mr. Gaitor did not in fact owe the debt as a result of his bankruptcy discharge.

Debtor's Supplemental Memorandum at 3. At the hearing, the Plaintiff made clear he asserted his state claims not because the facts of the case went beyond a standard discharge violation, but because the remedy under § 524 would be insufficient to stop U.S. Bank's wrongful conduct.

8

That is, the Plaintiff sought through his state law claims to supplement the remedy available to him under the Bankruptcy Code.

The Bankruptcy Court for the Northern District of West Virginia faced a similar situation in <u>Johnston v. Telecheck Services</u>, 362 B.R. 730. In that case, the debtor claimed that the creditor had violated a West Virginia statute prohibiting false representations of the character, extent, amount, or status of a claim against a consumer. <u>Id.</u> at 733-34. The bankruptcy court pointed out that without a determination that the creditor violated the Chapter 7 discharge injunction, the state statute would not provide any remedy for the debtor. <u>Id.</u> at 739. The court held that, "[b]ecause the application of State law in this case is being used to imbricate the remedies provided by the Bankruptcy Code," the debtor's state law claims for relief were preempted. <u>Id.</u> at 736.

The Plaintiff relies on <u>Waggett v. Select Portfolio Servicing, Inc. (In re Waggett)</u>, Bankr. No. 09-04152, Adv. Pro. 14-00096, 2015 WL 1384087 (Bankr. E.D.N.C. Mar. 23, 2015), to support his argument that the Bankruptcy Code does not preempt his state law claims. In <u>Waggett</u>, the debtors filed a voluntary petition under Chapter 11. The debtors' mortgage creditor sought and was granted relief from the stay in July 2009 as to certain of the debtors' real property. In April 2011, the debtors confirmed a Chapter 11 plan requiring them to convey the real property to the mortgagee within 30 days, which the debtors failed to do. Subsequently, the debtors began receiving monthly mortgage statements, phone calls, and communications threatening foreclosure and demanding verification that the real property had been winterized. The debtors were then granted a discharge in November 2013, of which the mortgagee received notice. Post-discharge, the mortgage servicer foreclosed on the property, sold it at public auction, and reported to the major credit reporting agencies that the debtors were in default and still

9

obligated to pay under the Note. The debtors filed an adversary proceeding against the mortgagee for violation of the Plan, Confirmation Order, discharge injunction, and various state laws. The mortgagee moved to dismiss the state law claims, arguing that they were preempted by the Bankruptcy Code. The bankruptcy court held that the state law claims were not preempted, emphasizing that they were "premised on other grounds than just a violation of the discharge injunction." Id. at *8. It distinguished Johnston on that basis, stressing that "[t]he claims in Johnston were based upon allegations that the *defendant had violated the discharge injunction. . . . The false accusation was that the Debtor had willfully refused to pay a just debt after that debt had been discharged*." Id. at *6 (citing Johnston, 362 B.R. at 731-32) (internal quotation marks omitted) (emphasis in original). The alleged facts and circumstances that led to the court's holding in Waggett, such as the pattern of conduct that ignored a Chapter 11 plan both pre- and post-discharge, are simply not present in this case. Instead, this case presents the type of interdependent claims that the court in Waggett distinguished from the claims before it.

Thus, to the extent the Plaintiff's Second, Third, and Fourth Claims for Relief presuppose violation of the discharge injunction, as the Plaintiff asserts they do, this Court holds that those claims for relief are preempted. Although the Plaintiff may feel that the remedy afforded to him under § 524 is insufficient, that is the remedy Congress provided; this Court may not rewrite the Bankruptcy Code to allow additional recovery.

**B.     This Court Does Not Have Subject Matter Jurisdiction to Hear the Plaintiff's State Law Claims.**

An argument could be made that some of the statutory provisions listed under the Plaintiff's Second Claim for Relief—namely, N.C.G.S. § 75-54(2) (which prohibits "[f]ailing to

10

disclose . . . that the purpose of [a] communication is to collect a debt"[3]) and N.C.G.S. § 75-55(3) (which prohibits "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer")[4]—exist independently of the alleged violation of the discharge injunction. To the extent the state law claims flow from the alleged violation of the discharge injunction, the claims are preempted as set forth above. To the extent the Plaintiff's state law claims are based upon allegations independent of a discharge violation, the claims do not fall within the limited scope of bankruptcy court jurisdiction. Therefore, this Court nonetheless grants U.S. Bank's Motion to Dismiss as to any such claims on the grounds that this Court does not have subject matter jurisdiction to hear them.

For a bankruptcy court to hear and determine any matter, it must have (1) subject matter jurisdiction under 28 U.S.C. § 1334, (2) statutory authority under 28 U.S.C. § 157, and (3) constitutional authority. Harvey v. Dambowsky (In re Dambowsky), 526 B.R. 590, 595 (Bankr. M.D.N.C. 2015). Bankruptcy courts derive their subject matter jurisdiction from 28 U.S.C. § 1334(b), which gives district courts "original but exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b).[5] The statute creates three distinct categories of matters over which jurisdiction is proper: matters which are

---

[3] At least one court has found such a claim to be preempted by direct conflict with the Bankruptcy Code: the Third Circuit in Simon v. FIA Card Services, N.A., 732 F.3d 259 (3d Cir. 2013), explained that if it allowed the plaintiff's FDCPA claim for failure to include a "mini-*Miranda*" notice, the defendant "would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the FDCPA by not including the notice." Id. at 280. Thus, the Third Circuit held, the plaintiff's FDCPA claim was preempted. See id.

[4] This Court would note that the Plaintiff's only allegation is of erroneous monthly statements. In light of this Court's holding that it lacks jurisdiction to hear the Plaintiff's NCDCA claims, we need not reach the issue of whether the monthly statements at issue here are "statement[s] of account used in the normal course of business."

[5] 28 U.S.C. § 157 then permits the district court to refer these cases and proceedings to the bankruptcy court. See 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.").

11

(1) arising under title 11, (2) arising in title 11, or (3) related to cases under title 11. See Bauer v. JP Morgan Chase Bank (In re Bauer), Bankr. No. 11-41910-BGC-7, Adv. Pro. 12-00037, 2012 WL 4442241, at *1 (Bankr. N.D. Ala. Sept. 24, 2012) (citing In re Toledo, 170 F.3d 1340, 1344 (11th Cir. 1999)). Subject matter jurisdiction, "because it involves a court's power to hear a case, can never be forfeited or waived," and so defects must be corrected even if neither party raises the issue. U.S. v. Cotton, 535 U.S. 625, 639 (2002); see also DiPaolo v. State Farm Fire & Cas. Co., 794 F.Supp.2d 633, 634 (E.D. Va. 2011) ("[P]arties cannot bestow federal courts with subject matter jurisdiction by consent."); King's Grant Golf Acquisition, LLC v. Abercrombie (In re T 2 Green, LLC), 364 B.R. 592, 601 (Bankr. D.S.C. 2007) ("Despite these previous admissions of jurisdiction, the [parties] cannot create subject matter jurisdiction by consent[,] nor may they waive a lack of subject matter jurisdiction . . . ." (citing Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 161 (3d Cir. 2004)).[6]

      Proceedings "arising under" Title 11 are those in which, on the face of the well-pleaded complaint, the plaintiff's claim for relief either is created by the Bankruptcy Code or otherwise depends on resolution of a substantial question of federal bankruptcy law. In re Harlan, 402 B.R. 703, 709 (Bankr. W.D. Va. 2009). A claim "arising in" Title 11 is one that is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." Grausz v. Englander, 321 F.3d 467, 471 (4th Cir. 2003) (citation and quotation marks omitted). A claim that could exist independently of the bankruptcy proceeding does not fall under the bankruptcy court's "arising in" jurisdiction. Harlan, 402 B.R. at 710 (citing Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 835 (4th Cir. 2007)).

---

[6] Thus the Plaintiff's observation that the parties consented to the entry of a final order in the joint scheduling memorandum is immaterial. See Debtor's Supplemental Memorandum at 2.

To determine whether a claim falls under a bankruptcy court's "related to" jurisdiction, the Fourth Circuit has adopted the Third Circuit's Pacor test. Valley Historic, 486 F.3d at 836 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). The test asks whether the outcome of the civil proceeding "could conceivably have any effect on the estate being administered in bankruptcy." Valley Historic, 486 F.3d at 836 (citation and quotation marks omitted). A common factual nexus, such as the mere fact that one of the litigants has filed for bankruptcy, does not by itself bring a claim under the bankruptcy court's "related to" jurisdiction where resolution of the claim will not affect the bankruptcy estate. Harlan, 402 B.R. at 711 (citations omitted).

The Plaintiff does not assert that his state law claims "aris[e] under" title 11. Instead, he argues, "to the extent that Mr. Gaitor's additional claims for violation of state consumer laws do flow from U.S. Bank's deceptive attempts to collect a discharged debt, those claims 'arise in' the bankruptcy."[7] Debtor's Supplemental Memorandum at 3. However, looking back at the Fourth Circuit's definition of a claim "arising in" title 11, it is difficult to understand how the Plaintiff's state law claims could be said to "aris[e] in" the bankruptcy. Claims under N.C.G.S. § 75-54(2) for failure to include a "mini-*Miranda*" warning and under N.C.G.S. § 75-55(3) for certain direct communications with a consumer can and do exist independently of the bankruptcy context. Cf. Bauer at *3 ("Plaintiffs' FDCPA and FCCPA claims do not arise in a case under title 11 because they are not bankruptcy administrative matters and could, and should, exist independent of title 11." (citation omitted)). The Plaintiff could assert such claims whether or not he had ever filed for bankruptcy. See, e.g., Green Tree Servicing LLC v. Locklear, 763 S.E.2d 523 (N.C. Ct. App. 2014) (holding, without mention of a bankruptcy filing, that that the defendants had standing to

---

[7] The Plaintiff appears to make this argument in an effort to be consistent with his position that all of his state law claims stem from violation of the discharge injunction.

pursue their counterclaims under the North Carolina Debt Collection Act); see also Johnston v. Valley Credit Servs., Inc. (In re Johnston), Bankr. No. 05-6288, Adv. Pro. 06-180, 2007 WL 1166017, at *5 (Bankr. N.D. W. Va. Apr. 12, 2007) (finding that the debtor's state law cause of action was not "arising under" or "arising in" title 11 "because a debtor's right to be free from a debt collector's contacts when the debtor is represented by an attorney exists independently of the Bankruptcy Code").

The Plaintiff's state law claims also do not fall under this Court's "related to" jurisdiction. Given that the claims arose post-petition and even post-discharge, resolution of the claims will have no effect on the bankruptcy estate. Courts applying the Pacor test[8] and similar standards have found that such post-petition, non-bankruptcy law claims do not fall under the bankruptcy court's "related to" jurisdiction. For example, applying the Pacor test, the bankruptcy court in Steele v. Ocwen Federal Bank (In re Steele), 258 B.R. 319 (Bankr. D.N.H. 2001), found that it did not have jurisdiction over the debtor's FDCPA and state law claims because "[a]ny recovery on the part of the Debtor would be his alone and would not inure to the benefit of the bankruptcy estate." Id. at 322 (where the debtor brought an action against Ocwen for post-discharge activity). Likewise, the Bankruptcy Court for the Northern District of West Virginia determined that under Fourth Circuit law, the debtor's state law claim was not "related to" the debtor's bankruptcy case because the success or failure of the claim would have no effect on the debtor's bankruptcy estate. See Johnston, 2007 WL 1166017, at *5 (finding that the debtor's claim that the defendant violated state law by contacting her instead of her attorney was not preempted by the Bankruptcy Code, but that the bankruptcy court lacked subject matter jurisdiction). See also, e.g., Wynne v. Aurora Loan Servs., LLC (In re Wynne), 422 B.R. 763,

---

[8] As noted above, this Court is bound by the Pacor test in full. See Valley Historic, 486 F.3d at 836 (citing Pacor, 743 F.2d at 994).

772 (Bankr. M.D. Fla. 2010) ("Since the outcome of the [debtor's post-petition FDCPA and state law claims] will not have any effect on the Debtors' bankruptcy estate, the claims are not 'related to' the bankruptcy case" under § 1334(b), and thus the bankruptcy court lacks subject matter jurisdiction.); Bauer, 2012 WL 4442241, at *3 (agreeing that FDCPA and state law claims which arose "after the full administration and resulting discharge in Plaintiffs' Chapter 7 case" were not "related to" the bankruptcy case) (citation and quotation marks omitted); id. ("In considering whether to exercise 'related to' jurisdiction over a combination of FDCPA and state law claims derived from post-petition conduct, many courts have held that the causes of action are not related to the bankruptcy case.") (citation and quotation marks omitted); Johnston, 2007 WL 1166017, at *5 ("Where a dispute concerns non-debtor parties, does not involve property of the estate, does not affect administration of the estate, or where the dispute will not affect payments to creditors under a confirmed plan, the bankruptcy court will generally not have jurisdiction under § 1334."). "If the proceeding in question is not 'related to' the bankruptcy, then the bankruptcy court has no jurisdiction to hear the matter at all." In re Freeway Foods of Greensboro, Inc., 466 B.R. 750, 766 (Bankr. M.D.N.C. 2012); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."). The Plaintiff's state law claims are not "related to" his bankruptcy case, nor are they "arising in" or "arising under" title 11, and consequently, the Court does not have jurisdiction to hear them.

C. **This Court Cannot Rely on Supplemental Jurisdiction to Hear the Plaintiff's State Law Claims.**

The Plaintiff further argues that because his state law claims arise from the same "case or controversy" as his claim for violation of the discharge injunction, the Court may exercise

supplemental jurisdiction over his state law claims. Debtor's Supplemental Memorandum at 3. As of yet, neither the Supreme Court nor the Fourth Circuit has determined whether bankruptcy courts may exercise supplemental jurisdiction. This Court concludes that they cannot, and thus supplemental jurisdiction may not be a basis for hearing the Plaintiff's state law claims.

As noted above, "in order for a bankruptcy court to hear and determine any matter, it must have subject matter jurisdiction under 28 U.S.C. § 1334," statutory authority, and constitutional authority. Dambowsky, 526 B.R. at 595. Assertion of supplemental jurisdiction by the bankruptcy court is not compatible with the Fourth Circuit's interpretation of § 1334. As already discussed, the Fourth Circuit has adopted the Pacor standard, which limits the reach of bankruptcy courts' "related to" jurisdiction under § 1334 to proceedings whose "outcome . . . could conceivably have an[] effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at 994. By contrast, supplemental jurisdiction under 28 U.S.C. § 1367 allows federal district courts to hear any state law claim that stems from the same "common nucleus of operative facts" as a federal law claim. Rosmer v. Pfizer, Inc., 263 F.3d 110, 116 (4th Cir. 2001). In other words, the two standards are not equivalent. Rejecting the exercise of supplemental jurisdiction by bankruptcy courts, the Fifth Circuit[9] found that the standard for supplemental jurisdiction was much broader than § 1334 and "could subsume the more restrictive 'relate[d] to' and 'arising in' jurisdiction," rendering that language "substantially, if not entirely, superfluous."[10] Walker v. Cadle Co. (In the Matter of Walker), 51 F.3d 562, 573 (5th Cir. 1995) (citation and quotation marks omitted).

---

[9] The Fifth Circuit also applies the Pacor standard. See Walker v. Cadle Co. (In the Matter of Walker), 51 F.3d 562, 573 (5th Cir. 1995).

[10] The general principles of statutory construction warn against reading a statute in a way as to render parts of it superfluous. See Penn. Dep't of Public Welfare v. Davenport, 495 U.S. 552, 562 (1990).

Just as the exercise of supplemental jurisdiction by a bankruptcy court is not supported by § 1334, bankruptcy courts also lack statutory authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Section 1367 provides that "*district courts* shall have supplemental jurisdiction." § 1367 (emphasis added). Section 157(a), in turn, allows district courts to refer some of the matters within their jurisdiction to bankruptcy courts, but only "cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). It is a "bedrock principle that federal courts have no jurisdiction without statutory authorization." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) (citing Finley v. United States, 490 U.S. 545, 548 (1989)). Congress has never expressly authorized bankruptcy courts to exercise supplemental jurisdiction, and so this Court concludes that it cannot. See Walker, 51 F.3d at 573 ("Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts . . . ."); In re Found. for New Era Philanthropy, 201 B.R. 382, 398 (Bankr. E.D. Pa. 1996) ("It is essential to recognize that bankruptcy judges do not have a jurisdictional grant co-extensive with the district court. On the contrary, 28 U.S.C. § 157(a) makes it very clear that the district court may only refer to bankruptcy judges bankruptcy cases and bankruptcy proceedings which arise in or under the Code . . . and related proceedings." (internal citation and quotation marks omitted)); Harlan, 402 B.R. at 713 ("[T]he jurisdictional grant in 28 U.S.C. § 1334(b) and 28 U.S.C. § 157, by implication, negates a bankruptcy court's exercise of jurisdiction of a supplemental non-federal claim in instances where that claim has no impact on the bankruptcy estate." (quoting Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006) (quotation marks omitted)); Johnston, 2007 WL 1166017 at *6 ("Even assuming . . . that an exercise of

supplemental jurisdiction would be proper under the terms of § 1367, Congress has not extended § 1367's jurisdictional grant to the bankruptcy courts.").

The fact that it might be convenient for the Plaintiff to adjudicate his state law claims alongside his claim for violation of the discharge injunction has no effect on this Court's jurisdiction. The Supreme Court has noted that "efficiency and convenience of a consolidated action will sometimes have to be forgone in favor of separate actions in state and federal courts." Finley, 490 U.S. at 555. Where a bankruptcy court has no statutory or constitutional authority to hear a claim, the interest of judicial economy cannot create jurisdiction. See Pacor, 743 F.2d at 994; see also Gates v. Didonato (In re Gates), Bankr. No. 04-12076-SSM, Adv. Pro. 04-1240, 2004 WL 3237345, at *3 (Bankr. E.D. Va. Oct. 20, 2004) ("[N]otwithstanding the obvious judicial economy that would result from this court exercising jurisdiction over the Fair Debt Collection Practices Act claims, the court reluctantly concludes that it is without power to do so.").

Therefore, IT IS ORDERED:

The Defendant's Motion to Dismiss is granted in part, and the Plaintiff's Second, Third, and Fourth Claims for Relief of his First Amended Complaint are hereby dismissed.

**END OF DOCUMENT**

PARTIES TO BE SERVED

BRADLEY D. GAITOR VS U.S. BANK NATIONAL ASSOC.
ADV. PRO. NO. 14-9059

Bradley D. Gaitor
7242 Ladbrooke St.
Raleigh, NC 27617

Michelle Merck Walker
Law Offices of James C. White, P.C.
P.O. Box 16103
Chapel Hill, NC 27516

Julie B. Pape
Womble Carlyle Sandridge & Rice
One West Fourth St.
Winston-Salem, NC 27101

William P. Miller
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402